Good morning. May it please the Court, Cassandra Lopez, Federal Defenders of San Diego, on behalf of the Appellant Jose Villegas-Guitierrez. Mr. Villegas-Guitierrez's conviction below must be reversed for three reasons. First, the District Court erred in allowing the AFILE custodian to offer opinion testimony regarding immigration procedures because the custodian wasn't qualified to offer such an opinion. After erroneously allowing the AFILE custodian to testify regarding immigration law, the Court precluded Mr. Villegas from cross-examining the custodian regarding his knowledge of immigration procedures. And third, the Court erred in refusing to give the jury instruction on official restraint. It's undisputed that the AFILE custodian was not an expert in immigration law, and at the motions and limine phase, Mr. Villegas filed an objection to the AFILE custodian testifying regarding immigration procedure. Nonetheless, the custodian was allowed to offer his opinion regarding the process for reapplying to the United States after deportation, and the custodian testified that the only way that he knew of that a person who had been deported could apply to return to the United States after deportation was by filing Form I-212. So because the custodian was allowed to offer his opinion testimony, as a preliminary matter, under MUPTAR, the Court was required to fulfill its gatekeeper obligation and make a determination regarding the reliability of this testimony and the relevance of this testimony. The Court did not make this determination, and for that reason, this is reversible  The District Court did say originally, in denying the motion to eliminate, that it was assuming the foundation was laid and that you could challenge that, and you didn't do it. There was no challenge to the testimony at the time the testimony was given. We objected at the time that the AFILE custodian began to testify regarding documents found in the AFILE. That's a different objection. Well, we objected at that time. That's not an objection to somebody giving an opinion. That's objecting to the documents. Was there an objection made to this witness testifying in response to the question about how to get permission to come back into the country? At that time, there was no objection made. So why is it you're expecting the Court to intervene on its own and say, oh, no, you can't testify. There's no objection. Why not let the question be answered? Well, I think under Mukhtar, and then the case that was recently reaffirmed by this Court in Barabin, the District Court's decision to allow presentation of the expert testimony to the jury without making any gateway determinations regarding relevance and reliability. It wasn't being offered up as opinion testimony. There was a question. The defense doesn't object. Okay. But nobody's seeking to qualify this witness as an expert. Well, this witness testified about more than just the documents found in the AFILE. This was opinion testimony. Sure, but there was no objection to it. So why is it that the Court should suddenly trigger this as an expert witness? There was an objection made at the motions in Limine. The objection at that point where the denial of the objection was qualified. He said, yes, he can testify to what he found in the AFILE, assuming there's a proper foundation for it. And so nothing precluded you from making this objection. That's correct. But there was an extensive discussion about the AFILE custodian's expertise and knowledge and the government in their response. And the District Court was obviously responsive to that because that's why the later questions that you sought to ask were blocked, because the witness didn't know about that. Right. Well, in a sense, what happened was that the District Court allowed the AFILE custodian to testify regarding his opinion and then precluded Mr. B. against testing. Because you didn't object to the first in hopes that it would open the door to the second, only it didn't. Well, I think under Mukhtar and Barabin, the court needed to make a threshold determination to fulfill its gatekeeper functions regarding the reliability and the relevance of this testimony. And the court didn't do so. Did judges really sit there deciding, I'm going to make the objections the defense counsel is not making? They do that all that often? Well, prior to trial, there was an extensive discussion about it. Exactly. And prior to trial, the judge said it was going to depend upon foundation. Now, here's a question that defense counsel could have objected, lack of foundation. This witness doesn't know. But there was no such objection. You're trying to tell us now the District Court has an affirmative obligation to police that. I just don't know where that comes from. When the AFILE custodian began testifying regarding the documents in the AFILE, at that point, Mr. Villegas did object. And because the AFILE custodian then proceeded to testify regarding opinion testimony, as I said, more than just Which is a different objection, as you acknowledged a moment ago. That's correct. An objection that was not made. I think our point is Where, by the way, did he say that this is the only way to do it? At ER, he said in his experience, the only way he knew of to reapply for admission was by filing Form I-212. At ER-13 That was on the cross? Is that right? In the cross at ER-13, he testified that the only way to reapply for admission was to file an I-212 form. And that was the point at which you tried to get the I-212 form in. Well, that's moving on to my next point, which is somewhat related. Because in this case, the AFILE custodian was allowed to offer his opinion regarding immigration law. And then when Mr. Villegas sought to challenge his knowledge and to challenge his expertise in front of the jury, the court precluded him from questioning regarding the Form I-212. And so that's my second point. This evidence was relevant because it would impeach his testimony that the only way to file or to reapply for admission after deportation was to file Form I-212. Is there any foundation for the question? I mean, the problem was that he testified he wasn't familiar with that form. So how is it proper across examination to ask him about a form he's not familiar with? Well, the government questioned this witness regarding the form. It was the government's witness who first mentioned the I-212 form. Absent that questioning, there would never have been any discussion at trial regarding the I-212 form. I guess I'm not sure. What is it you're referring to now? Well, the form to reapply for admission after deportation is Form I-212. And the only evidence that the government presented with respect to this form was calling the AFILE custodian. That's Agent Yornel. And Agent Yornel testified that the only way for a person to reapply for admission after deportation was to file Form I-212. The only way that he knew of. The only way that he knew of. Which wasn't incorrect, was it? Well, the I-212 form itself. What he said wasn't incorrect. You're not alleging it was incorrect. He didn't know of any other method. He didn't know. However, the instructions. The attempted cross-examination was based on instructions which he testified he was not familiar with. Correct. So where's the foundation for the further questions that were going to be based on those instructions? Well, because the form itself is. . . The instructions in the form are essentially the same document. The form and the instructions are available on the CIS, the U.S. Citizen and Immigration Service website. It's part of the Department of Homeland Security's. . . There's two links. It says form and then instructions. In the form, Agent Yornel testified about the form. And then when Mr. Villegas sought to question him in greater detail about the instructions to the form, the court precluded that, finding that he wasn't an expert.  And that's why this testimony was relevant, because it would have called into question not only. . . But what is the ultimate relevance of all this? Ultimately, the question is, did your client have permission? That's correct. And the agent testified, as I understood it, that he looked in the agent's eyes and said, for permission, under his name and not under different forms. That's correct. And if there had. . . And there's. . . Is there any reason to think that however he would have gotten that permission, it wouldn't have been in the file? Well, there were, according to the forms, different ways a person could reapply for admission. I understand that. But the question of whether the only way to apply was through 212 or some other way isn't the ultimate question of the case. The question isn't applying, it's getting. Well, I think that here the question is the reliability of this witness. And as the Supreme Court said in Melendez-Diaz, confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well. And this testimony would have challenged this witness's familiarity with immigration law. But what. . . Yes. So what? But so what? In the end, is there any real doubt about the availability of this defense in real terms to the defendant? I think that that's the burden on the government. And Mr. Villegas at trial had a right to hold the government to its burden of proof and challenge the government with respect. . . Are you going to address the surveillance question as well? Well, I wanted to address briefly the question with respect to the jury instruction. And here the testimony at trial was that Mr. Villegas was arrested close to the port of entry and near the international border fence. There was an agent who testified that this is an area that's heavily patrolled. There are cameras in the area. And so Mr. Villegas, given one of the elements of Villegas. . . What evidence was there? I mean, taking the proposed instruction that you've offered up, what affirmative evidence was there that, in fact, he was under observation from the moment he crossed the border? Well. . . None. There's none. The only evidence I see is there's a seismic register after he's crossed the border, and there's no evidence of visual observation at all. Well, first off, one of the elements of the offense is that he entered free from official restraint. And that's one of the elements that the government has to prove. Taken as a whole, the circumstances of Mr. Villegas' arrest create reasonable doubt as to whether or not he did enter free from official restraint. I'm looking for where's the evidence that he was observed from when he crossed the border. All I see is evidence that he wasn't observed. He was triggered. . . The information that he was across the border was triggered by the seismic alarm, which we've got case law saying doesn't count for official restraint purposes. What affirmative evidence is there that he, in fact, was being observed? Well, Mr. Villegas isn't saying that the seismic sensor was enough. And the affirmative evidence is that this is a heavily patrolled area. The government didn't call the scope operator. And you didn't either. That's correct, but it's not our burden to prove. . . He testified that whatever surveillance there was, this was a dead spot where he found this person. He testified that there are blind spots. He also testified that the cameras. . . And that it was a dead spot where he found, I guess, Mr. Villegas. But why isn't this like Castellanos, where there were 15 officers in the area, and the theory was, well, one of them might have seen Castellanos cross the border, but we said that's not enough evidence to warrant a jury instruction. Because Castellanos wasn't arrested in an area that was heavily patrolled, that had cameras in the area. There's no evidence that there were cameras. Well, there were 15 guards, or the 15 other Border Patrol officers in the area. But there wasn't evidence that any one of them had actually seen him. And similarly here, there's evidence that there was surveillance, but there wasn't evidence that any of them had actually spotted him cross the border. So I'm trying to understand why it's not controlled by Castellanos. Well, similarly in the Bello-Bahena case, there was no evidence that Mr. Bello had been observed crossing the border. But there was evidence that he was observed after he crossed the border. There was evidence that he was observed after he crossed the border. There wasn't evidence that. . . There was evidence of surveillance. It was just a question of where exactly. That's right. Here, there wasn't that either. It falls somewhere in the cracks, essentially. I don't know if I've used up all my time or if I can reserve some time for rebuttal. You have to reserve one minute.  Thank you. Or why would I give you a minute? Good morning. May it please the Court. Robert Huey for the United States. Your Honors, the district court did not abuse its discretion in denying an official restraint instruction. This case is distinguishable from the Bello-Bahena case because in that case the apprehending agent testified that another agent had continuously surveilled the subject. Let me say one thing that bothered me, however, or it bothered me, which is that the prosecutor here twice told the jury that they had no obligation to prove this. He brought it up himself and he said, we have no obligation to prove that he was not under constant surveillance. That seems to me to have sort of put the lack of instruction in a somewhat different light because it wasn't simply that there was no instruction, but that there was an affirmative representation that it wasn't the government's burden, and that isn't true. Well, Your Honor, in this case those comments at closing were made in the context of commenting on what the defense promised to prove in opening. So what? It's still an erroneous statement. I mean, I understand that there's a trigger for when it gets to the jury or it doesn't, but it's a flatly erroneous statement. Your Honor, in this case it was an accurate statement of what the government was required to prove because that statement was consistent with the court's jury instructions. But the reason for the – if the court's jury instruction was proper, it's because there wasn't a trigger of evidence to demonstrate enough to get it to the jury, but not because if there were, the jury – it wasn't – the burden wasn't on the government. They seem to me to be misleading the jury, really. But I understand that wasn't the point of the – that wasn't objected to as such. It nonetheless indicates – to me puts the instruction question in a somewhat different light. Well, I do understand Your Honor's point to put those remarks in context. The reason is that when the defense opens and makes representations about what the evidence will be and then does not prove up those representations, the government is allowed to comment on it, just like vice versa. But he can comment on it by saying they never put on any evidence about this, but that isn't what he said. He commented on it by saying they're wrong, we don't have to do this. Well, Your Honor, I believe it was accurate in this case that the government did not have to prove that given the instructions that the district court gave. When it comes to the testimony of the AFILE custodian, I want to be very clear on what he testified to. He did not get up on the stand and offer a legal opinion about the Form I-212 and say this is the only way you can come back. What he said was – he was asked, in your experience as an AFILE custodian, are you familiar with the types of documents that reflect in that file that someone has been given consent to reapply for admission? He said, yes, that's the Form I-212. He was asked, what is that form? Well, it's a two-step process. First you apply for consent, and then if the consent is granted, you reapply for admission. It wasn't until cross-examination of Agent Urinell on page 13 of the excerpts of record that the defense is trying to pin Agent Urinell into making a statement that the I-212 is the only way to come back. And it's at that point that he gives that testimony, and even then it's qualified testimony because he says, as far as I know, this is the only way to do it. So even then he's careful not to offer a legal opinion. He's just testifying to the best of his knowledge. Now, the district court did allow the defense to cross-examine Agent Urinell extensively about the Form I-212. They effectively cross-examined him and got him to concede the fact that he had never filled out that form. He had never helped someone else fill that form out. He wasn't familiar with the process of filling it out. And these are all points that the defense made good use of in closing. They were not points that ultimately persuaded the jury. But Mr. Villegas was allowed to cross-examine Agent Urinell about this topic. And the district court also invited Agent Urinell, also invited the defense, to offer an expert witness, to offer evidence in its case, that there are other ways to reapply for admission. In the big picture, however, the court has made the point that, regardless of whether there are ways other than the Form I-212, regardless of whether there's a permit you can get from the State Department, in this case, having reviewed the entire A file, having reviewed the databases, there was no evidence of any kind of permit, I-212 or not. Unless the Court has further questions, it's admitted. Thank you. Just with respect to the jury instruction, in United States v. Spetz, this Court held that only slight evidence will create the factual issue necessary to get the defense to the jury. So what's the evidence? Well, the evidence is that, taken as a whole, the circumstances under which Mr. Villegas Gutierrez was arrested gave rise to the reasonable doubt that he was under official restraint. And in that way, this … You don't even have to prove that it gave rise to reasonable doubt. You have to prove that somebody might think it gave rise to it. Correct. So I apologize, I misspoke. So this is actually a more concrete … This is an important question, so even though I take you over your time, I mean, Castellanos says there's got to be some evidence, and you're trying to suggest, in effect, that the absence of evidence is evidence, because I don't see anything that suggests affirmatively that he, in fact, was under restraint. Agents in the neighborhood under Castellanos aren't enough. Why does the existence of cameras, which appear to be focusable, movable cameras, and there's testimony there's a dead spot, there's testimony that the first information about him came from the seismic monitor, not from some visual observation, and there's testimony that the agent who was out there ordinarily would have been told if they'd spotted him, and he wasn't told that. So how do all of this … I mean, yeah, there's a basis for saying that maybe he was observed, but I'm looking for where's the affirmative evidence of observation, and I just don't see it. Well, I think that this was a jury instruction that would have been a more complete instruction with respect to the elements of the offense, because one of the elements is that the defendant enter free from official restraint. This instruction would have clarified for the jury what the government was required to do. But you're essentially arguing, therefore, it should always be given. Well, not necessarily. In the circumstances of this arrest, where Mr. Villegas was when he was arrested, the fact that we heard testimony that this was a heavily patrolled area and that there were cameras that run 24 hours a day, seven days a week. It should almost always be given. If he's arrested in Los Angeles six weeks later, maybe you don't have to give it. But if he was arrested at the border, you think it should always be given. Well, and like Bellow-Bahena, in that case, there was no evidence about how or the circumstances under which Mr. Bellow crossed the border. We had no testimony or evidence at all as to whether he was observed crossing the border. So in that way, this case is like the Bellow case, because there's certainly – there's evidence that he could have been observed, and the government didn't do any of that investigation. The Bellow case isn't a seismic – which case are you relying on? Well, there's the Bellow-Bahena case. Oh, that one. Okay. That's the case where the individual – But that's where they saw him. They saw him through a scope that was about a mile north of him. Correct. Unless the Court has other – further questions. All right. Thank you very much. Thank you. Thank you all for your arguments. United States v. Villegas Gutierrez, and we will take a 10-minute break. Thank you very much.
judges: Berzon, Clifton, Ikuta